Move to our second case of the morning, United States v. White. Two consolidated appeals, 21-2875 and 21-2892. Mr. Henderson, good morning to you. Good morning. May it please the Court. My name is Peter Henderson. I represent Antoine White. In order to impose a sentence more than double the top end of the guidelines range, the District Court needs to offer an especially compelling justification. That justification shouldn't contain errors, procedural errors. And here we've got a couple that, in our view, are particularly important. The first is that a defendant has a due process right to be sentenced on the basis of accurate, reliable information. And the District Court here emphasized in aggravation that Mr. White had not held a job, he had a very limited employment history, and in particular emphasized that towards the end of the imposition of sentence that Mr. White's actions speak louder than his words. And his conduct after his release from prison showed that he hadn't made any changes in his life, that he hadn't made any efforts of rehabilitation. In fact, Mr. White did maintain employment. There was just an error the government acknowledges. The District Court did not realize that Mr. White had worked for nine months at Skate King while also working for part of that time at McDonald's. That's the type of inaccurate information that the District Court relied on that is reversible error. The District Court should have exercised its discretion with a proper understanding of the facts of the case. Mr. Henderson, how can we say on this record, given what the District Court said, that the one month versus nine months of employment is really material? Because it seems to be in looking at the sentence as a whole, which we have to do, that the Court's focus was on the fact that he was troubled by this uninterrupted pattern, the fact that it was planned out, the fact that he had these prior convictions, and he gets out, hasn't learned his lesson, and goes right back into this burglary with violent conduct at the end when he flees and runs into a car. The employment seems, the two sentences said about that, seems almost as an aside. I disagree that it was an aside. I mean, the District Court spent time notwithstanding those other aggravating factors to say, I'm evaluating what your record has been like. I mean, normally under the policy statements, employment records shouldn't even be a consideration. And so the fact that the District Court thought this is a consideration that I'm considering an aggravation, I think shows that the Court relied on that information. The other thing is what the Court was assessing was, have you made any strides? I see an uninterrupted pattern. You know, in the last ten years you've had no employment. Well, most of that time Mr. Roy was in prison, and when he was released, he had steady employment until the beginning of 2020, and then the pandemic hit, and there are other explanations. He faced a series of personal tragedies. But the fact that a factor that is usually shouldn't be considered as part of a departure was considered, I think it's good evidence that this was something the District Court relied on. Mr. Henderson, can I ask you a factual question that I have in looking at this? There is a reference in the chronology in the pre-sentence materials of the employment record. There's a reference that it looks like in the spring of 2020, I don't know if you have it there, paragraph 99, that Mr. White may have started to attend Barber College that way. And I was curious about that because attending Barber College can take enough time to take you away from part-time employment. Barber College would suggest the pursuit of an occupation distinct from hourly work at the retail level or fast foods or for him at the roller rink that way. Do you know anything about that? I have no more information than what's in the pre-sentence report, and I think that's the only indication. I know that what I understand is there were plans to start that, but then March 2020 pandemic hit. Yeah, that was my next question. Was attending Barber College an option in March of 2020? I don't think so. I think that's one of those professions in particular that really became not an option. Yeah, okay. Apart from the employment history, the other real issue we have is that the district court did not address Mr. White's explanation for why he would possess a firearm. The district court is entitled to agree or disagree that the reasons Mr. White gave for possessing a firearm are mitigating or aggravating. It's no abuse of discretion to say, I understand you had a particular target on your back given your familial associations, and that mitigates the seriousness of the offense. It wouldn't be an abuse of discretion to say that's no excuse. You're a convicted felon. You're not allowed to have a firearm. But if you don't address it, then this court has no ability to review the reasonableness of an explanation. And so looking at, for example, the Williams case out of the Sixth Circuit where a district judge saw that, and again, this isn't a generalized I need it for my protection. These are particularized, detailed facts that are substantiated about why that actually was a rationale in the possession of the firearm. And I think that distinguishes this case from many other cases where you might say, look, this is just a rote argument. We hear this all the time. This was particularized to this defendant, and it warranted the district judge's attention. Why wouldn't the court's statement that I am aware of the defendant's tragic losses to gun violence satisfy that he addressed that particular issue? I think that addressed a different concern. So what Mr. White brought up at sentencing was in that period in early 2020, he lost a number of family members in acquaintances to gun violence. That wasn't why he possessed a firearm. The reason why he possessed a firearm was the particular target on his back due to his association with his brother, or half-brother who had been convicted of a heinous and notorious murder. So it's just a different concern, I think. And with that, I'll save you my time. Okay, very well. Mr. Scheid, good morning. Good morning. May it please the court, my name is Paul Scheid, and I represent the United States. This court should affirm Mr. White's sentence. The district court provided a more than sufficient explanation for the sentence, giving a detailed description of the 3553A factors that justified an 84-month term of imprisonment. Specifically, the district court's sentence was the product of reasoned judgment that the guidelines did not adequately capture the need for specific deterrence, the defendant's lack of respect for the law, and the pattern of criminal conduct that the defendant engaged in. The district court explained that it was, quote, frankly troubled by what it referred to as an uninterrupted pattern of defendant's criminality. Relatedly, it noted that the defendant had had two prior incarcerations of significant length, which had not dissuaded him from committing the offenses in this case. The district court also talked at length about the details of those offenses and the defendant's historical ones and described how those details betrayed a lack of respect for the law. The court noted that the defendant totally ignored his conditions of supervised release and possessed a firearm in this case while he was on both supervised release and pretrial release. You know, I don't think there's any dispute that the district court said a lot about why it was imposing an 84-month sentence. The district court said a lot to justify the 3553A factors. I think under Miller, one thing that we have to necessarily look at is what the district court said about a factor that it mentioned on its own as impacting its sentence and whether that statement reflected misinformation. Your Honor, on the topic of inaccurate information, the district court did not rely on the defendant's tenure at Skate King, which was the misstatement here, in crafting its sentence. Fairly read, the transcript makes clear that the analysis did not hinge on whether he was at Skate King for one month or eight to nine months. The context of that discussion of defendant's employment history was the defendant's larger failure to turn his life around, quote, to change his ways. And the dominating factor for the district court on that point was that the defendant committed two serious offenses while on supervised release. This is after the lengthy discussion of the defendant's pattern of criminal conduct, the planning involved in those criminal offenses, and the dangerousness of those offenses. The district court says a lot more than just Skate King and getting the length of months at Skate King wrong. The district court says something broader. He says this gentleman's had virtually no employment history. And, in fact, I'm wondering, are we able to ignore it when the district court returns to it at the end of the sentencing when talking about supervised release? He refers again to the defendant working at jobs that don't mean much. That's a quote. And then the district court reiterates it again in its written statement of reasons. We all know the oral sentence is what counts. But the statement of reasons here is reflecting, again, what the district court thought important when it posed the sentence orally. So I'm not sure if your statement that the broader point was this uninterrupted pattern and failure to turn his life around really helps because it seems to me on this transcript the district court was connecting the employment history to that broader point. I will note that in the context of the later statement, that was in response to dialogue with defense counsel on the conditions of release. And I don't think that bolsters the argument that this was important to the district court. I would also note that— Well, the district court, in fact, says this is the whole point for me. I think this is the main issue. He needs to be trying to get a career skill. I'm paraphrasing now, not working at jobs that don't mean much. To the extent that the district court did care about the defendant's employment history, the district court's broader point on that still holds regardless of the misstatement about Skate King. The difference of six months at McDonald's versus eight to nine months at Skate King as the defendant's longest period of employment in a 10-year period is not a major difference. It would not have changed the sentence in part because the Skate King issue was a small part of the court's discussion of the defendant's employment history, but also because that discussion of employment history was in the larger context of him failing to turn his life around, which the major factor there was the two offenses while on supervised release and the second of those while on supervised release and pretrial release. Mr. Shah, let me ask you. It's a related question, but coming at it from maybe a little bit different perspective. When I read the statement, your client has no history of working, almost no history in connection with the supervised release conditions, I thought, well, that may be factually accurate, but that is largely because of the length of his periods of incarceration that way. He didn't have a lot of years to pursue work, and I thought that may be an error, but there's other portions of the transcript, are there not, where it's pretty clear that the judge understood that he was incarcerated for quite a while. That's correct, Judge, and it's also important to note that the length of time that the defendant was incarcerated was something that the court did consider. That itself was one of the major reasons why the court pointed to the need for specific deterrence in this case because the defendant had spent two lengthy terms of imprisonment that had not dissuaded him from committing the offenses in this case. Did you litigate the case in the district court? No, Your Honor. Okay. This is an unfair question, but I'm curious. Do you know anything about this pursuit of barber school? I do not, Your Honor. There's that one reference, but that's it, and nobody's coming back to it, so there may not be anything else. There may not, Your Honor, and to put that point in the context of the district court's discussion of employment history, while, again, the government does not think that that discussion in general or the Skate King mistake in particular was important to the court, the defendant's moving around from job to job, from the temp agency to barber school is consistent with the court's understanding that the defendant had not been successful for whatever reason in pursuing a career for an extended period of time. And, of course, that was in part based on his terms of incarceration, which the court was also aware of. Let me ask two other questions. I don't see in the transcript where the district court acknowledged his work history while incarcerated because it does seem on this record that Mr. White had a number of jobs while in prison. Did I miss that? No, Your Honor. I know that the district court did refer to some of the defendant's issues. Disciplinary issues. Disciplinary issues in prison, but I do not believe there was a discussion of his jobs while incarcerated. And then let me ask you this. Say Mr. White had had sustained and somewhat impressive work history from the time he was released shortly before the pandemic, I guess the year before the pandemic, up until the pandemic, do we think the district court would have commented on that? Would it have at all factored into its analysis? Or would he have simply not commented on it? Your Honor, I would be speculating, but I would say even if the district court had commented on it, if the district court had not commented on it, it would not have meaningfully impacted the district court's analysis here because in discussing employment history at all, and again, this was a relatively brief section of the sentencing hearing, the district court was concerned with whether or not the defendant had successfully made a change after his prior terms of incarceration. And the offenses in this case swamp any other consideration for the court with regards to that. Understandably so. These were offenses that occurred while on supervised release and pretrial release. They were dangerous offenses, and that was the motivating factor for the court. And so the employment, whether or not he had had successful employment, it would not have changed that analysis for the court. I see that I'm running out of time here. If the court has no other questions, I would ask that the court affirm Mr. White's sentence. Okay, thank you, Mr. Scheid. Mr. Henderson. It seems to me that the district court's concern was about what happened when Mr. White was released from prison. Is this a I'm going right back to criminality, or is it I'm going to make an effort? Obviously, things went sideways at the end. We know that there was an eventual return. But that was an important factor for the court, and the court just misunderstood the information. We should allow the district court, with the correct information, to be able to make that discretionary call. The other thing that I just noted is one of the materials that was submitted in advance of sentencing was a letter from the supervisor at Skate King, where she wrote that he had excelled in the role. He had exhibited high levels of productivity, efficiency. I mean, this was part of his arguments to say, I really gave it a good try. I know that I failed in the end, but I didn't come out and immediately return to criminality. This comment may be to no end because I don't think we know about the barber school, but one of the things that was running through my mind here is I thought, look, this fellow is incarcerated for quite a while. As he leaves prison, it's not the easiest thing to go find a long-term profession. So these retail, fast food, skate king kind of jobs may have been what he was able to get right when he was released, and then he was attempting to pursue what you might think of as more stable, perhaps more of a professional trade in working as a barber, but it's not developed that way. I mean, there could be a lot of reasons why he's working at McDonald's and working at Skate King. It's what was available to him in his situation. Somebody with multiple felonies on his record has a hard time finding jobs other than this. All right. I have nothing further. Thank you. Okay. Very well. Thanks to both counsel. Appreciate it very much. We'll take the case under advisement.